NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE SGS NORTH AMERICA VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, F/K/A THE GAB ROBBINS VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION AND JEMMA AYAZ, | : : : : : : : | **Hon. Dennis M. Cavanaugh** **OPINION** Civil Action No.02-3252 (DMC) |
| Plaintiff, | : : | |
| v. | : : | |
| GAB ROBBINS NORTH AMERICA, INC. | : : | |
| Defendants. | | |

DENNIS M. CAVANAUGH, U.S. District Judge

This matter comes before the Court on Defendant's motion to re-open the trial record to introduce new evidence. No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the following reasons, Defendant's motion is **granted.**

BACKGROUND AND PROCEDURAL HISTORY

Defendant GAB Robins North America, Inc. ("GAB Robins") formerly called GAB Business Services, Inc., established the Voluntary Employees' Beneficiary Association ("VEBA") effective January 1, 1975, for the exclusive purpose of providing for payment of group benefit plans for employees and certain retirees of GAB Robins. GAB Robins established the VEBA to provide for

payment of specific welfare benefit programs ("Plans") in the event of sickness, accident, death, disability or other interruption of the Participant's earning power.  GAB Robins created the VEBA pursuant to §501(c)(9) of the Internal Revenue Code and was exempt from federal income tax.

SGS North America ("SGS") owned GAB Robins during the time period for which Plaintiff is seeking damages up until November 30, 1999.  On November 30, 1999, SGS North America sold the stock of its subsidiary GAB Robins to Brera GAB Robins, LLC ("Brera").  As part of the transaction, GAB Robins assigned all of its right, title and interest in and to the VEBA.  Under the Stock Purchase Agreement, SGS  retain[ed] the assets held in the VEBA Trust.  The VEBA was a single employer plan.  Although SGS retained the VEBA trust assets pursuant to the assignment, SGS did not retain any of the employees or beneficiaries covered by GAB Robins' plans.  At the time of the assignment, SGS had no knowledge of GAB Robins' failures to deposit the Aetna premium refunds for the plan years from 1992 through 1998 into the VEBA.

In order to provide benefits to its employees, retirees and beneficiaries, GAB Robins procured from Aetna Life Insurance Company ("Aetna") a Group Life and Accident and Health Insurance Policy ("the policy") effective January 1, 1991.  The policy was not assigned as a result of the sale by SGS of GAB Robins to Brera.  GAB Robins was, and still remains, the policyholder of the policy.

At the end of the calender or plan year, Aetna provided an annual accounting to GAB Robins that summarized the year's premiums, plans' costs, administrative service charges and experience credits. The VEBA Declaration requires that the VEBA be audited once each year by an independent certified public accounting firm, which was required to certify the results of its audit.  It is undisputed that from 1994 through 1999, Coopers & Lybrand and later Price Waterhouse Coopers

("the VEBA auditors") were engaged to audit the financial statements and supplemental schedules of the VEBA. Aetna's annual accountings included a cover letter detailing the plan year's financial results and explaining GAB's Robins' right to request a refund of any amounts in excess of the Aetna-determined reserve amount. GAB Robbins always requested that the maximum allowable refund be paid to it.

When Aetna's annual accounting for the 1999 plan year was issued in October 2000, a dispute arose between SGS and GAB Robins over which entity was entitled to receive $251,161 in Aetna premium refunds and reserves, referred to as the Premium Stabilization Reserve ("PSR"). Counsel for SGS and GAB Robins agreed that $54,632.14 would be transferred to the VEBA and that the remaining $198,528.86 would be held in trust by GAB Robins in order to allow the parties to try to resolve their dispute. Attempts at resolution failed and a Complaint was filed on July 3, 2002.

A bench trial was held April 12, 2005, through April 14, 2005, on the issue of whether GAB Robins breached its fiduciary duties under ERISA by failing to deposit the Aetna insurance premium refunds for plan years 1992 through 1999 into the VEBA. GAB Robins brings the instant motion to re-open the trial record to introduce new evidence pertaining to: 1) whether the insurance premium refunds GAB Robins received from Aetna consisted of employee, employer, or a combination of employee and employer contributions; and 2) the admission of the counter-designations of Neil Rogers' deposition testimony on the issue of the underfunding of the VEBA.

DISCUSSION

A. Standard

A motion to reopen the trial record to admit additional proof is in the sound discretion of the trial judge.  Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 331 (U.S., 1971).  Because there has not been a decision in this case, this motion is not regarded as one governed by Rul 59 (motion for new trial) or Rule 60 (motion for relief from judgment) under the F.R. Civ. P.  See Penn W. Assocs. v. Cohen, 371 F.3d 118, 125 (3d Cir., 2004) (holding that Rule 60(b) applies only to final judgments and orders); See Schick Dry Shaver, Inc. v. General Shaver Corp., 26 F. Supp. 190, 191 (D. Conn., 1938) (holding a motion to re-open could not be considered a R. 59 motion for a new trial if a decision had not been rendered.)  Although there is no express statutory provision of substantive law specifically allowing the reopening of a trial, the Court in Caracci v. Brother International Sewing Machine Corp held that "such has become a rule of law supplied by the jurisprudence. It appears to be a cannibalization of those qualities found in Rules 59 and 60 [of the] Federal Rules of Civil Procedure, New Trials and Relief from Judgment or Order respectively, geared by the philosophy of Rule 1, that is, the 'just, speedy, and inexpensive determination of every action.'" Caracci v. Brother International Sewing Machine Corp., 222 F. Supp. 769, 771 (D. La. 1963).

Whether a court will reopen a trial is largely within the discretion of the trial judge. Shanteau v. United States, 1979 U.S. Ct. Cl. LEXIS 958, at *7 (Ct. Cl. 1979).  In deciding whether the Court will reopen the trial record, the trial judge may consider the following factors: (1) the moving party must show diligence or justification for failure to discover and present the

proposed evidence during the ordinary course of the trial; (2) the moving party must be prepared to state specifically what the additional evidence would be; (3) the proffered evidence and testimony which would result from granting the motion must not be merely cumulative; and (4) there must be a substantial showing that the proposed evidence could materially affect the findings and the outcome of the case.  Id.

      B. Testimony of Mary Ann McElhiney

In this case, Defendant argues that a substantial injustice would occur if it is not permitted to introduce additional testimony of Mary Ann McElhiney showing that the Group Universal Life Insurance Policy was not part of Aetna's year end reconciliations.  Defendant asserts that it did not discover this evidence until the conclusion of the trial.  Defendant seeks to introduce this additional evidence in the form of a declaration of Mary Ann McElhiney, a representative of Aetna.  Defendant further argues that one of the most important issues in this case is whether employee contributions made up a portion of the insurance premium refunds.  (Def.'s Br.  at 8.)  Defendant argues that the additional testimony supports its contention that the premium refunds paid to GAB Robins by Aetna were never assets of the VEBA. Id.

Plaintiffs, on the other hand, argue that it is immaterial whether the funds paid to GAB Robins were derived from company or employee contributions since the insurance premium refunds constitute VEBA plan assets and may not be paid to GAB Robins regardless of the origin of the funds.  (Pls.' Br. at 5.)

Plaintiffs further argue that Ms. McElhiney's deposition was taken roughly eight days before the start of the bench trial and Defendant failed to ask a single question about the Group

5

Universal Life Insurance Policy or whether it was included in Aetna's annual accounting results at the deposition. (Pls.' Br. at 3.) Defendants argue they exercised due diligence in trying to obtain the newly discovered evidence regarding which policies were included or excluded in Aetna's year end reconciliation through Ms. McElhiney's deposition. (Def.'s Reply Br. at 3.)

In applying the four factors previously articulated, the Court is satisfied Defendant diligently attempted to obtain the information sought through Ms. Mc McElhiney's deposition by asking Ms. McElhiney "whether or not any insurance plans, other than the HMO, were not part of Aetna's year end reconciliation." (See Dep. Tr. of Mary Ann McElhiney at 39:16-20 attached as Ex. 1 of Grady Reply Decl.) The Court further finds the testimony of Ms. Mc McElhiney Defendant is seeking to admit is specific and not cumulative of evidence previously admitted. The Court further finds that the method through which Defendant is seeking to introduce Ms. McElhiney's testimony, i.e. through a declaration is not sufficient. Accordingly, Defendant may depose Ms. McElhiney limited to the narrow issue of which policies were included or excluded in Aetna's year end reconciliation. Ms. McElhiney's deposition is to take place at Aetna's offices located in Middletown, Connecticut within thirty (30) days of the date of this Opinion.

### C. Deposition excerpts of Neil Rogers

Defendant seeks to admit the counter-designated portions of Neil Rogers' ("Rogers") deposition testimony. Counsel for Defendant, Michael O. Adelman, Esq., asserts that he was under the mistaken impression that the counter-designated portions of Rogers' testimony were admitted. Upon discovering that Rogers' testimony was not admitted, Mr. Adelman immediately contacted the Court and requested that the trial record be reopened to admit Rogers' deposition

6

testimony.

Plaintiffs argue that Rogers' testimony is cumulative of the issue that the VEBA was underfunded and further argues that the evidence is not relevant since Rogers' testimony relates to the negotiations of the Stock Purchase Agreement by which Brera purchased GAB Robins and the VEBA was assigned. Plaintiffs further argue that since the Stock Purchase Agreement was not admitted into evidence, negotiations surrounding the Stock Purchase Agreement is not relevant. (Pls.' Br. Opp'n at 7.)

Defendant argues that the negotiations are relevant in that Rogers' testimony demonstrates that VEBA's underfunding was a consideration in arriving at the purchase price Brera paid for GAB Robins.

The Court finds Defendant demonstrated its diligence in immediately contacting the Court upon realizing that Rogers' testimony was inadvertently not moved into evidence. Further, Rogers' counter-designations were specifically identified in the Final Pre-trial Order. Further, the Court finds Rogers' testimony is not cumulative of testimony already admitted into evidence since Rogers' testimony is related to a method of calculating the underfunding different than the method testified to by Ms. Ayaz and Mr. Ferugheli. Accordingly, the trial record is to be opened to allow Defendant's counter-designations of Rogers' deposition testimony to be admitted. Additionally, in allowing the admission of Defendant's counter-designations of Rogers' deposition testimony, the Court will also permit the admission of Plaintiffs' designations of Rogers' deposition testimony if Plaintiff so desires.

<u>CONCLUSION</u>

Based on the foregoing, Defendant's motion to reopen the trial record to allow testimony of Ms. McElhiney and the designations and count-designations of Rogers' deposition testimony is **granted**.  An appropriate Order accompanies this Opinion.

       S/ Dennis M. Cavanaugh
       DENNIS M. CAVANAUGH, U.S.D.J.

Dated: August 19, 2005